```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
   AMARJIT SINGH,                                           :
                                                            :
                              Petitioner,                   :
                  - against -                               :
                                                            :
   ANDREA QUARANTILLO, In her official                      :
   capacity as the Long Island Field Office                 :
   Director, U.S. Citizenship & Immigration                 :   MEMORANDUM DECISION AND
   Services; JUDITH ALMODOVAR, In her                       :   ORDER
   official capacity as the New York Field Office           :
   Director, U.S. Immigration & Customs                     :   25-cv-6392 (BMC)
   Enforcement; KRISTI NOEM, In her official                :
   capacity as Secretary, U.S. Department of                :
   Homeland Security; TODD M. LYONS, In his                 :
   official capacity as Acting Director Of                  :
   Immigration & Customs Enforcement;                       :
   PAMELA BONDI, In her official capacity as                :
   Attorney General, U.S. Department of Justice,            :
                                                            :
                              Respondents.                  :
----------------------------------------------------------- X
```

Petitioner, a native and citizen of India, seeks a writ of habeas corpus ordering his release from Immigration and Customs Enforcement ("ICE") detention because, according to petitioner, ICE detained and will soon deport the wrong Amarjit Singh. For the reasons below, the petition is denied.

## BACKGROUND

This case concerns three immigration files: Amarjit Singh, Alien Number (A#) 073 423 276; Ramjit/Ranjit Singh, A# 072 766 052, and Paramjit Singh, A# 073 644 871. According to U.S. Citizen and Immigration Service ("USCIS") records, between 1994 and 1995, these individuals entered the United States in violation of the immigration laws and were subsequently

ordered removed. A 2019 investigation concluded that these files all relate to the same person who was entering the country under different identities.

At the core of this habeas petition is the file relating to Amarjit Singh, A# 073 423 276. ICE records show that this person entered the United States without inspection in Arizona around 1995 filed an asylum application in California the following year. That asylum application was denied and was unsuccessfully appealed to the Board of Immigration Appeals ("BIA"). The Ninth Circuit rejected the petition for review on November 17, 1999.

Soon afterward, on December 3, 1999, the applicant requested, and was granted, advanced parole which allowed him to legally enter the United States for the next year. The parole authorization, which petitioner admits relates to him, states that it belongs to "an applicant for adjustment of status [who] intends to return to the United States to resume processing of the adjustment of status application."

On September 15, 2000, the applicant filed a motion for the BIA to reopen his case under the Convention Against Torture. With that motion now pending, he entered the United States in Michigan on October 27, 2000, pursuant to the advanced parole authorization. The BIA subsequently denied the motion on January 31, 2001, and a warrant of deportation was issued on March 15, 2001.

All of this came to a head last year when petitioner submitted his fingerprints as part of his most recent immigration filing. Those fingerprints matched the prints in the consolidated files, and in 2025, another investigation was launched. Like the 2019 investigation, the 2025 investigation concluded that petitioner is the same person as the three identities in the now-consolidated file, who had previously been removed in 2009. So, when petitioner appeared for

an interview for his latest filing, ICE detained him pursuant the 2001 removal order. In other words, the 2001 removal order was "reinstated" against petitioner. See 8 C.F.R. § 241.8.

Petitioner appears to have seen this coming. Four months before his arrest, petitioner, through counsel, notified USCIS that he believed his immigration file was mixed up with a person with the same name and A#. He based this conclusion on documents from USCIS obtained under the Freedom of Information Act ("FOIA"). USCIS's production of FOIA materials apparently included applications for immigration benefits that related to a person with the same name and A# as petitioner, but which petitioner states he did not file.[1] In sum, petitioner contends that everything in the file before the parole authorization from December 3, 1999, relates the "other" Amarjit Singh. But as the Government has shown, the California asylum application was submitted by the same person – petitioner – who entered the United States in Michigan on October 27, 2000.

**DISCUSSION**

Shortly after his arrest, petitioner filed the instant petition, challenging his detention on due process grounds. In opposition to the petition, the Government challenges the Court's subject matter jurisdiction and responds to the merits of petitioner's due process claim. For the reasons below, the Court has subject matter jurisdiction and denies the petition.

I. **Subject Matter Jurisdiction**

Relying heavily on Delgado v. Quarantillo, 643 F.3d 52 (2d Cir. 2011), the Government contends that this Court has no jurisdiction to hear the petition. In most circumstances, the Government would be correct because the Immigration and Nationality Act contains many "jurisdiction-stripping provisions." See Mahdawi v. Trump, 136 F.4th 443, 452 (2d Cir. 2025);

---

[1] Petitioner contends that the immigration applications produced under FOIA describe life experiences that are not his, and include photographs of a person other than petitioner.

3

see also, 8 U.S.C. § 1252(a)(5) (limiting "judicial review of an order of removal" to the Courts of Appeal).

But here, the Government is wrong, because petitioner independently challenges the constitutionality of his detention, not the underlying removal order. See Ozturk v. Hyde, 136 F.4th 382, 401 (2d Cir. 2025) ("Construing an independent constitutional challenge to detention as necessarily implying a challenge to removal would lead to what Jennings [v. Rodriguez, 583 U.S. 281, 293 (2018)] called an 'absurd' result.").

Delgado recognized that not every case brought "against immigration authorities is [a] challenge to a removal order." 643 F.3d at 55. Pointing to a decision from the Sixth Circuit, Delgado noted that the "district court, not court of appeals, ha[s] jurisdiction where plaintiffs' 'habeas petition[] challenges only the constitutionality of the arrest and detention, *not* the underlying administrative order of removal[.]'" Id. (quoting Kellici v. Gonzales, 472 F.3d 416, 420 (6th Cir. 2006)). Likewise here, petitioner's constitutional challenge is separate from his removal order, and concerns only the due process under which his current detention was predicated.

## II.  Due Process

ICE detaining and potentially deporting the wrong person, of course, raises constitutional concerns.[2] See Hernandez v. United States, 939 F.3d 191, 201 (2d Cir. 2019) (colorable constitutional challenge that ICE "lacked probable cause to lodge the detainer" because plaintiff "was the wrong person"). Here, petitioner claims that his imminent deportation is predicated on mistaken identity.

---

[2] Petitioner here does not, and likely could not, argue that his Fourth Amendment rights were violated because his detention is predicated on mistaken identity. See Martinez v. Muentes, 340 F. App'x 700, 701 (2d Cir. 2009) ("a mistaken identity can provide the basis for probable cause"); Hill v. California, 401 U.S. 797, 802-03 (1971) (police officers have probable cause to arrest an individual with a sufficiently similar appearance to the description in a warrant).

4

"Parties claiming denial of due process in immigration cases must, in order to prevail, 'allege some cognizable prejudice fairly attributable to the challenged process.'" Garcia-Villeda v. Mukasey, 531 F.3d 141, 149 (2d Cir. 2008) (quoting Lattab v. Ashcroft, 384 F.3d 8, 19 (1st Cir. 2004)).[3] The "challenged process" here is ICE's reinstatement of the deportation order, the process of which is governed by 8 C.F.R. § 241.8:

> In establishing whether an alien is subject to [reinstatement], the immigration officer shall determine the following:
> . . .
>
> The identity of the alien, *i.e.*, whether the alien is in fact an alien who was previously removed, or who departed voluntarily while under an order of exclusion, deportation, or removal.  In disputed cases, verification of identity shall be accomplished by a comparison of fingerprints between those of the previously excluded, deported, or removed alien contained in Service records and those of the subject alien.  In the absence of fingerprints in a disputed case the alien shall not be removed pursuant to this paragraph.
> . . .
>
> Whether the alien unlawfully reentered the United States.  In making this determination, the officer shall consider all relevant evidence, including statements made by the alien and any evidence in the alien's possession.  The immigration officer shall attempt to verify an alien's claim, if any, that he or she was lawfully admitted, which shall include a check of Service data systems available to the officer.

In petitioner's case, his identity is disputed, and ICE verified his identity by fingerprint comparison.[4]  The question therefore is whether ICE considered "all relevant evidence, including

---

[3] How much process someone is due depends on circumstance, and immigration law is one sphere where that amount is minimal.  The Court will not undertake an academic analysis of the issue, however, because the process to which petitioner was due is explicitly outlined by federal regulation.

[4] Petitioner does not seriously challenge the scientific adequacy of fingerprint analysis.  Nor could he, because "[i]t is without question that fingerprint analysis [is] a scientifically sound technique for identification[.]"  See United States v. Salim, 189 F. Supp. 2d 93, 100 (S.D.N.Y. 2002).  That said, fingerprint analysis is only regarded as ironclad in criminal cases because the experts' examination and conclusion of a "match" is pressure-tested on cross examination.  ICE's fingerprint analysis here does not appear to be akin to in criminal cases.  See, e.g., United States v. Mahmood, No. 17-cv-1562, 2020 WL 532062, at *2 (D. Conn. Feb. 3, 2020) (discussing "the report of a fingerprint examiner with the U.S. Department of Homeland Security"); Marks v. Clark, No. 06-cv-1796, 2007 WL 2042243, at *2 (W.D. Wash. May 29, 2007) (discussing a "fingerprint comparison performed by the Department of Homeland Security Forensic Laboratory").  The Government does not describe the extent of the analysis but, according to petitioner, "officers visually checked the biometrics [and] concluded that 'the prints match[.]'"  If

statements made by [petitioner]" and made an "attempt to verify [petitioner's] claim [that he] was lawfully admitted[.]"

Petitioner's due process argument boils down to that ICE did nothing to verify his claim of a "mix up" before reinstating the deportation order against him.  Whether ICE did so then is a moot issue because the Government has now done so in response to the petition, and has reached the same conclusion.[5]  "The Government has significant discretion to enforce the immigration laws [but] it must do so consistent with the requirements of its own regulations and the Due Process Clause."  Zongbo Zhu v. Genalo, 798 F. Supp. 3d 400 (S.D.N.Y. 2025) (citing 8 C.F.R. § 241.4).  ICE and the Government's conclusion that petitioner is not the "wrong" Armajit Singh comports with those requirements.

---

petitioner is correct, ICE's conclusion might not be based on a "scientifically sound technique for identification." See Salim, 189 F. Supp. 2d at 100.  And, as petitioner points out, "No underlying biometric comparison report, image quality score, or chain-of-custody evidence [was] produced."  However, this level of proof is not generally required in non-criminal cases, and petitioner provides no reason to doubt the fingerprint analysis itself.  Petitioner's challenge is narrowed to ICE's recordkeeping: "DHS offers no explanation how ten-print cards taken in separate jurisdictions and decades apart were labeled, scanned, and indexed – or how mis-labeling at any stage is excluded." But for the reasons stated herein, that argument is unavailing.

[5] The Court's own review of the record compels the same conclusion.  Petitioner never stated that October 27, 2000, was the "first" time he entered the United States.  In his attorney's 2025 letter to USCIS, he said that date was when petitioner "last entered."  This verbiage is consistent with a 2014 immigration application filed by petitioner's current spouse, stating "his last date of arrival in the US was as a Parolee on 10/27/2000."  Further, petitioner admits that he was previously married to Madeline Garcia and that she petitioned USCIS on his behalf.  ICE's 2019 investigation confirmed that this marriage occurred in New York on March 27, 1997, and that the petition related to Ms. Garcia was filed on August 8, 1997.  In other words, petitioner effectively admits to entering the United States at least once before October 27, 2000, and petitioner provides no lawful basis for that entry.  Lastly, the record suggests that the California asylum applicant moved to New York.  The BIA's January 2001 decision in the California asylum application was mailed to a New York lawyer, and the March 15, 2001, deportation warrant was mailed to the applicant's personal address in Elmhurst, NY – the same address listed on the December 3, 1999, advanced parole application, which petitioner admits relates to him.

6

## CONCLUSION

Due process is not a results-based function. Petitioner was afforded the process to which he was due, and ICE concluded that he was deportable pursuant to the reinstated removal order. Accordingly, the Court denies the petition for a writ of habeas corpus.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
　　　　January 6, 2026